UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| REBECCA PRUITT MALDONADO, | § § | |
| Plaintiff, | § § | NO:  SA:12-CV-961-DAE |
| vs. | § § § | |
| CITY OF PEARSALL, TEXAS, and JOSE ROLANDO SEGOVIA, | § § § § | |
| Defendants. | § | |

ORDER DENYING DEFENDANT SEGOVIA'S MOTION TO DISMISS

On October 9, 2013, the Court heard oral argument on the Motion to Dismiss filed by Defendant Jose Rolando Segovia ("Segovia").  (Dkt. # 22.) Mark Anthony Sanchez, Esq., appeared on behalf of Plaintiff Rebecca Pruitt Maldonado ("Plaintiff").  Charles Frigerio, Esq., appeared on behalf of Defendant Segovia, and Alberto Lopez, Esq., appeared on behalf of Defendant City of Pearsall ("the City").  After careful consideration of the memoranda in support of and in opposition to the Motion, and in light of the parties' arguments at the hearing, the Court, for the reasons that follow, **DENIES** Segovia's Motion. (Dkt. # 22.)

1

BACKGROUND

According to the First Amended Complaint, Plaintiff began working as the Secretary of Community Development for the City of Pearsall in 1995. (Dkt. # 13 ("FAC") ¶ 10.) In July of 2010, the City promoted Plaintiff to Zoning Administrator, increasing her salary from $22,000 to $25,000. (Id. ¶ 11.)

After reviewing the Pearsall City Charter, Plaintiff discovered that the salary designated for department directors—such as Zoning Administrators—was $30,000, not the $25,000 she was being paid. (Id. ¶ 12.) In addition, Plaintiff realized that the City had been paying her almost 20% less than male department directors. (Id.)

Plaintiff complained to Albert Uresti ("Uresti"), then the acting City Manager, about the disparity in pay. (Id. ¶ 13.) Plaintiff alleges that Uresti mocked her requests for equal pay and refused to enforce the City Charter. (Id.)

In response to Plaintiff's complaints about unequal pay, Segovia, a sitting member of the Pearsall City Council, allegedly began harassing Plaintiff based on her gender. (Id. ¶ 14.) Plaintiff asserts that this behavior began shortly after she was promoted in July 2010 and has continued through the present day. (Id.)

Plaintiff alleges that Segovia's harassment eventually escalated to the point of physical assault. In January of 2011, Segovia allegedly stormed into

the City Clerk's office and began criticizing Plaintiff in public. (Id. ¶ 15.) Segovia "became enraged and belligerent," causing Plaintiff to fear for her safety. (Id.) He allegedly "berated" Plaintiff and "slapped her across the head." (Id.) Plaintiff claims that she was in such fear for her safety that she believed she could not leave; she "simply cowered in fear." (Id.) Plaintiff alleges that she reported this incident to law enforcement authorities. (Id.)

On October 9, 2012, after timely filing a Charge of Discrimination against the City of Pearsall with the EEOC and receiving a Dismissal and Notice of Rights, Plaintiff filed the instant suit against the City and Segovia. (Dkt. # 1; FAC ¶¶ 5–6.) On February 13, 2013, Plaintiff filed her First Amended Original Complaint. (Dkt. # 13.) The FAC brings claims against the City for violations of Title VII of the Civil Rights Act of 1964 ("Title VII") (id. ¶¶ 16–17) and of the Equal Pay Act of 1963 ("EPA") (id. ¶¶ 18–20); it brings claims against Segovia for Assault/Battery (id. ¶ 21) and False Imprisonment (id. ¶ 22).

On April 24, 2013, Segovia filed the Motion to Dismiss that is now before the Court, alleging that he is immune from liability under Title VII and the Texas Tort Claims Act because he, as an elected city councilman, is an "employee" of the City. (Dkt. # 22.) On May 8, 2013, Plaintiff filed a Response. (Dkt. # 23.) Segovia did not file a Reply.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Review is limited to the contents of the complaint and matters properly subject to judicial notice. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). In analyzing a motion to dismiss for failure to state a claim, "[t]he court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss. See Twombly, 550 U.S. at 555–56. In providing grounds for relief, however, a plaintiff must do more than recite the formulaic elements of a cause of action. See id. at 556–57. "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to

4

legal conclusions," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (internal quotations and citations omitted). Thus, although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 (5th Cir. 1994); see also Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").

When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court." Twombly, 550 U.S. at 558 (citation omitted). However, the plaintiff should generally be given at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002).

## DISCUSSION

I.   Plaintiff's Title VII Claims

Segovia first "asserts . . . that there is no individual liability under Title VII, as a matter of law." (Dkt. # 22 ("Mot.") at 2.) However, this argument is irrelevant to the instant case, because Plaintiff does not seek to assert any Title

VII claims against Segovia; she asserts those claims against the City only.  (See FAC ¶¶ 16–17; Dkt. # 23 ("Resp.") at 2.)  Thus, to the extent that Segovia's Motion requests that the Court dismiss Plaintiff's Title VII claims against him, the Court denies that request as moot.

II.   Plaintiff's Claims for Assault and Battery and False Imprisonment

   A.   Section 101.106 of the Texas Tort Claims Act

Next, Segovia argues that Plaintiff's state-law intentional-tort claims are barred by § 101.106 of the Texas Tort Claims Act ("TTCA").  (Mot. at 2.)  That section provides, in relevant part:

> (a) The filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter.
>
> . . . .
>
> (f) If a suit is filed against <u>an employee</u> of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only.  On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

Tex. Civ. Prac. & Rem. Code § 101.106(a), (f) (emphasis added).

Segovia argues that, "as a councilman of the City of Pearsall, he is an 'employee' under the terms of the Texas Tort Claims Act." (Mot. at 2.) Citing the Supreme Court of Texas's decision in <u>Franka v. Velasquez</u>, 332 S.W.3d 367, 385 (Tex. 2011), Segovia insists that Plaintiff's state-law tort claims "must be brought against the governmental entity, as opposed to the employee acting in the course and scope of his employment," and that the claims against him are therefore barred as a matter of law. (Mot. at 2–3.)

    B.    <u>Segovia Is Not Entitled to Dismissal of Plaintiff's State-Law Claims</u>

As explained in more detail below, Segovia is not entitled to dismissal of Plaintiff's state-law claims, (1) because he was not an "employee" as that term is defined by the TTCA, and (2) because Plaintiff has pleaded facts that, if true, indicate Segovia was not acting within the scope of his employment when he committed the acts that form the basis of her state-law tort claims.

    1.    <u>Segovia Was Not an "Employee" Under the TTCA</u>

Section 101.106 of the TTCA plainly limits its scope to suits brought against "an <u>employee</u> of a governmental unit." Tex. Civ. Prac. & Rem. Code § 101.106(f) (emphasis added). A claim warrants dismissal pursuant to § 101.106(f) only if it is "based on conduct within the general scope of [an] <u>employee's</u> employment . . . ." <u>Id.</u> (emphasis added). Defendant Segovia

acknowledges as much in his Motion, which is why he argues that "he is an 'employee' under the terms of the Texas Tort Claims Act." (Mot. at 2.)

However, the TTCA's definition of "employee" is very clear:

> "Employee" means a person, including an officer or agent, who is in the <u>paid</u> service of a governmental unit by competent authority, but does not include an independent contractor, an agent or employee of an independent contractor, or a person who performs tasks the details of which the governmental unit does not have the legal right to control.

Tex. Civ. Prac. & Rem. Code § 101.001(2). Quite plainly, an individual is not an "employee" within the meaning of this section unless he is <u>paid</u> for his service. See <u>Harris Cnty. v. Dillard</u>, 883 S.W.2d 166, 167 (Tex. 1994) (holding that the "plain language" of the TTCA excludes from the definition of "employee" a volunteer deputy sheriff who is "not in the paid service" of the county); <u>Olivares v. Brown & Gay Eng'g, Inc.</u>, 401 S.W.3d 363, 368 (Tex. App. 2013) (noting that the TTCA's definition of "employee" requires both "'control <u>and</u> paid employment'" (quoting <u>Adkins v. Furey</u>, 2 S.W.3d 346, 348 (Tex. App. 1999))); <u>Thomas v. Harris Cnty.</u>, 30 S.W.3d 51, 53 (Tex. App. 2000) (finding that physicians were not "employees" under the TTCA in part because there was "no evidence that the physicians . . . were in the paid service of Harris County"); cf. <u>City of Cockrell Hill v. Johnson</u>, 48 S.W.3d 887, 893 (Tex. App. 2001) (describing the Whistleblower Act's definition of "public employee" as "similar to" the TTCA's definition of "employee" and holding that because the defendant,

an alderman, "was not paid to perform any services for the City, he was not a public employee under the Act").

Segovia cites <u>Texas Bay Cherry Hill, L.P. v. City of Fort Worth</u>, 257 S.W.3d 379 (Tex. App. 2008), for the proposition that city council members are "employees" of the city.  (Mot. at 2.)  However, Segovia reads <u>Texas Bay Cherry Hill</u> too broadly.  In that case, Cherry Hill appealed the trial court's dismissal of its claims against Fort Worth city councilwoman Becky Haskin.  257 S.W.3d at 385.  The trial court had found that Haskin was an "employee" under the TTCA and was thus entitled to dismissal of the state-law tort claims Cherry Hill had brought against her.  On appeal, Cherry Hill contended that Haskin was not an "employee" under the TTCA "because the City [did] not have the legal right to control the details of a council member's tasks . . . ."  <u>Id.</u> at 398.

The court began its analysis by looking to the definition of "employee" contained in § 101.001(2) of the Texas Civil Practice and Remedies Code:

> "Employee," as defined by the Tort Claims Act, means a person, including an officer or agent, who is in the paid service of a governmental unit by competent authority, but does not include an independent contractor, an agent or employee of an independent contractor, or a person who performs tasks the details of which the governmental unit does not have the legal right to control.

257 S.W.3d at 398 (citing Tex. Civ. Prac. & Rem. Code § 101.001(2)).

Recognizing that this definition requires that an employee (1) be in the "paid

9

service of a governmental unit" and (2) be someone who performs tasks the details of which the governmental unit does have "the right to control," the court quickly concluded that the first prong was satisfied in this case:

> First, the City presented uncontroverted evidence that the City paid Haskin for her services as a City council member.  Thus, Haskin was "in the paid service of a governmental unit." See Tex. Civ. Prac. & Rem. Code Ann. § 101.001(2).

Id.  It was only after the court found that the first prong was satisfied—that is, only after the court found that Haskin was paid by the City—that it moved on to the second prong: whether the City had the legal right to control the details of the councilwoman's assigned tasks.  Id.  Explaining that "[t]he Act's definition of 'employee' does not require that a governmental unit control every detail of a person's work," the court eventually concluded that Haskin also satisfied the second prong of the test and was therefore an employee.  Id. (emphasis added).

Contrary to the argument made by Segovia's counsel at the hearing, at no point did the court in Texas Bay Cherry Hill attempt to rewrite § 101.001(2) by suggesting that the "paid service" prong of the test was optional.  Instead, the court's analysis demonstrates that the TTCA's definition of "employee" sets up a conjunctive, two-prong test—that is, both prongs must be satisfied before someone may be considered an employee.  See Olivares, 401 S.W.3d at 368 (noting that the TTCA's definition of "employee" requires both "'control and paid employment'" (quoting Adkins, 2 S.W.3d at 348)).  Put another way, if a

10

defendant fails to satisfy the "paid employment" prong, a court need not address whether the governmental unit had the right to control the details of his assigned tasks, and vice-versa. Because Haskin satisfied both prongs, the court in Texas Bay Cherry Hill concluded that she was an employee entitled to dismissal of Cherry Hill's state-law tort claims. See 257 S.W.3d at 398.

In this case, by contrast, Plaintiff has attached a copy of Article 3, Section 3.05, of the City of Pearsall's City Charter, which states that "[n]o member of City Council nor the Mayor shall receive compensation." (Resp. at 4; id. Ex. 1.) Segovia did not file a Reply to Plaintiff's Response, and at the hearing his counsel neither contested that this section of the City Charter applied to Segovia nor argued that Segovia was a paid employee. While there may be cogent reasons why an unpaid city council member should be covered by the TTCA, that is a decision for the Texas Legislature, not this Court. Accordingly, because Segovia has not shown that he was "in the paid service of a governmental unit," he has not shown that he was an employee of the City of Pearsall under the TTCA, and he is not entitled—at least not at this stage—to dismissal of Plaintiff's state-law intentional-tort claims under § 101.106.

## 2. Even Assuming Segovia Is an Employee, Plaintiff Has Alleged Facts Suggesting That He Was Acting Outside the Scope of His Employment

The TTCA bars claims against employees of a governmental unit that are "based on conduct within the general scope of that employee's employment . . . ." Tex. Civ. Prac. & Rem. Code § 101.106(a), (f). "'Scope of employment,'" in turn, "means the performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employee by competent authority." Id. § 101.001(5). Thus, Plaintiff insists that, even if Segovia is an "employee" within the meaning of the TTCA, he was not acting within his "scope of employment" at the time that he allegedly assaulted, battered, and falsely imprisoned her, and that the TTCA therefore does not bar her claims. (Resp. at 5.)

"An official acts within the scope of [his] authority if [he] is discharging the duties generally assigned to [him]." City of Lancaster v. Chambers, 883 S.W.2d 650, 658 (Tex. 1994). This is true even if the employee, in discharging his duties, acts in part to serve his own or a third party's interest. Anderson v. Bessman, 365 S.W.3d 119, 125–26 (Tex. App. 2011). Moreover, an act may be within the scope of the employee's duties even if the specific act that

forms the basis of the civil suit was wrongly or negligently performed, so long as the action was one related to the performance of his job. See Chambers, 883 S.W.2d at 658 (holding police officers were acting within the scope of their authority in pursuing a suspect even if driving negligently to do so); Tex. Dep't of Pub. Safety v. Tanner, 928 S.W.2d 731, 735 (Tex. App. 1996) ("Even if a specific action is wrong or negligent, an officer acts within the scope of his authority when performing the general duties assigned.").

       The allegations in the FAC, which the Court must accept as true for purposes of a motion to dismiss, support Plaintiff's claim that Segovia was not acting within the scope of his employment when he took the actions that form the basis of her state-law claims. Segovia was a member of the city council at the time of the alleged incidents, and there is no indication, either in the FAC or in Segovia's Motion to Dismiss, that he was carrying out his duties as a city council member at the time that he "stormed into the City Clerk's office," began yelling at Plaintiff, and eventually "slapped her across the head." (FAC ¶ 15.)[1] There is no indication that Segovia worked in the City Clerk's office, that he was there on official business, or that he was yelling at Plaintiff regarding a matter that was

---

[1] Segovia's counsel argued at the hearing that Segovia merely gave Plaintiff a "love tap." Even assuming that a "love tap" could somehow be considered within the scope of a city council member's employment, the fact remains that the Court, for purposes of a motion to dismiss, must accept the allegations in the Complaint as true.

relevant to his duties as a city councilman.  See Terrell ex rel. Estate of Terrell v. Sisk, 111 S.W.3d 274, 278 (Tex. App. 2003) (holding that an employee who killed someone with her car was not acting within the scope of her employment because she was on her way to personal appointment in her own car).  Unlike a situation involving, for example, a police officer making an arrest, there is no reason to believe that Segovia was authorized to use any quantum of force against Plaintiff—or would ever have any reason to believe that force was necessary—in order to perform the duties assigned to him.  See Kelemen v. Elliott, 260 S.W.3d 518, 524 (Tex. App. 2008) (finding no evidence that an officer was acting in the scope of his employment when he kissed a fellow officer without consent while on duty).

At the hearing, Segovia's counsel argued that Ballantyne v. Champion Builders, Inc., 144 S.W.3d 417 (Tex. 2004), supported his claim that Segovia was acting within the scope of his employment as required by the TTCA.  However, Ballantyne does not contradict the proposition that "public officials act within the scope of their authority if they are discharging the duties generally assigned to them." Id. at 424 (emphasis added).  In that case, the Supreme Court of Texas found that members of a city's zoning board of adjustment ("BOA") were acting within the scope of their authority when they voted to revoke a permit for the construction of an apartment complex because "[t]he relevant sections of

14

the Texas Local Government Code and the Ordinance, which are the source of the BOA's legal authority, conclusively establish that hearing and deciding appeals of the issuance of building permits based on zoning regulations is within the authority of the BOA and its members." Id. at 422.  Because the BOA members were acting within the scope of their authority, they were entitled to official immunity from suit arising from those actions.  Id. at 425.

For the reasons given, the allegations in the FAC do not indicate that Segovia was "discharging the duties generally assigned to [him]," id. at 424, when he allegedly slapped Plaintiff in the face.  Accordingly, even if Segovia did qualify as an "employee" under the TTCA, he would not be entitled to dismissal of Plaintiff's claims at this stage in the proceeding, because Plaintiff has sufficiently alleged that he was acting outside the scope of his employment when he committed the actions that form the basis of her state-law tort claims.

   3. Franka v. Velasquez

Plaintiff asserts that the Court should deny Segovia's Motion for a third reason: because "[t]he Election of Remedies provision of the Texas Tort Claims Act is triggered [only] when a plaintiff sues a governmental entity and individual for the same claims at the same time." (Resp. at 3.)  She insists that she brings these claims against Segovia in his individual capacity, that she makes

15

"[n]o such claims" against the City, and that there are thus "no separate remedies from which to 'elect' as contemplated by the Texas Tort Claims Act." (Id.)

Plaintiff appears to be arguing that Franka would not require the dismissal of her state-law tort claims against Segovia even if he were an employee, and even if he had been acting within the scope of his employment, because she has "elected" to proceed against him rather than against the City. However, this argument misunderstands the holding of Franka. In that case, the Supreme Court of Texas made clear that any state-law tort claim brought against a government employee based on actions within the scope of his employment must be dismissed. See Tipps v. McCraw, --- F. Supp. 2d ----, 2013 WL 2250120, at *5 (W.D. Tex. May 22, 2013) ("[Section] 101.106(f) protects employees even in their individual capacities . . . . [Franka] held that § 101.106 'foreclose[s] suit against a government employee in his individual capacity if he was acting within the scope of employment.'" (quoting Franka, 332 S.W. 3d at 381)). Such claims must be brought against only the government entity, even if the state has not waived sovereign immunity for a particular claim. See Univ. of Tex. Health Sci. Ctr. at Houston v. Crowder, 349 S.W.3d 640, 649 (Tex. App. 2011) ("[T]he Franka court expressly concluded that . . . the Legislature [had] made whatever remedy the Tort Claims Act provides against the governmental

16

unit a claimant's exclusive remedy for damages allegedly caused by common-law torts committed by a government employee in the scope of her employment.").

This, however, is a moot point. Because the Court has already found that Segovia does not qualify as an "employee" and does not appear to have been acting within the scope of his employment, the TTCA does not entitle Segovia to dismissal of Plaintiff's state-law tort claims.

## CONCLUSION

For the foregoing reasons, Defendant Segovia's Motion to Dismiss (Dkt. # 22) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, October 15, 2013.

_____
David Alan Ezra
Senior United States District Judge